B 104 [10/06]

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>STEAKHOUSE PARTNERS, INC.; PARAGON STEAKHOUSE RESTAURANTS, INC.; and PARAGON OF MICHIGAN, INC. | DEFENDANTS<br>T. SCOTT AVILA, in his Capacity as Creditor Trustee of the Class IV Creditor Trust |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Julia W. Brand, Esq. (SBN 121760) jbrand@linerlaw.com<br>Enid M. Colson, Esq. (SBN 189912) ecolson@linerlaw.com<br>LINER GRODE STEIN YANKELEVITZ, ET AL<br>1100 Glendon Ave - 14th Floor<br>Los Angeles, CA  90024 | (310) 500-3500 | **ATTORNEYS** (If Known)<br>Sharon Z. Weiss, Esq. (SBN 169449) sweiss@richardsonpatel.com<br>RICHARDSON & PATEL<br>10900 Wilshire Blvd - Ste 500<br>Los Angeles, CA  90024 | (310) 208-1182 |

**PARTY** (Check One Box Only)
- ■ Debtor
- ☐ Creditor
- ☐ Trustee
- ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Other

**PARTY** (Check One Box Only)
- ☐ Debtor
- ■ Creditor
- ☐ Trustee
- ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Other

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint to surcharge collateral of Class IV Creditor Trust

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11 - Recovery of money/property - § 542 turnover of property
- ☐ 12 - Recovery of money/property - § 547 preference
- ☐ 13 - Recovery of money/property - § 548 fraudulent transfer
- ☑ 14 - Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31 - Approval of sale of property of estate and of co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41 - Objection / revocation of discharge - § 727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51 - Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66 - Dischargeability - § 523(a)(1),(14),(14A) priority tax claims
- ☐ 62 - Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61 - Dischargeability - § 523(a)(5), domestic support
- ☐ 68 - Dischargeability - § 523(a)(6), willful and malicious injury
- ☐ 63 - Dischargeability - § 523(a)(8), student loan
- ☐ 64 - Dischargeability - § 523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65 - Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71 - Injunctive relief - reinstatement of stay
- ☐ 72 - Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81 - Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91 - Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01 - Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa *et.seq.*
- ☐ 02 - Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 15,000,000.00 |

Other Relief Sought

Not less than $15,000,000.00 in amount to be proven at trial

B 104

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br><br>STEAKHOUSE PARTNERS, INC., et al | | BANKRUPTCY CASE NO.<br><br>08-4147-11 |
| DISTRICT IN WHICH CASE IS PENDING<br><br>Southern District of California | DIVISIONAL OFFICE | NAME OF JUDGE<br><br>The Hon. James W. Meyers |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF<br><br>NONE | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |

# INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

1  Julia W. Brand, Esq. (SBN: 121760)
       jbrand@linerlaw.com
2  Enid M. Colson, Esq. (SBN: 189912)
       ecolson@linerlaw.com
3  LINER GRODE STEIN YANKELEVITZ
   SUNSHINE REGENSTREIF & TAYLOR LLP
4  1100 Glendon Avenue, 14th Floor
   Los Angeles, California 90024-3503
5  Telephone:  (310) 500-3500
   Facsimile:  (310) 500-3501
6
7  Attorneys for Debtors in Possession and Plaintiffs
   STEAKHOUSE PARTNERS, INC., PARAGON
8  STEAKHOUSE RESTAURANTS, INC., & PARAGON OF
   MICHIGAN, INC.
9

10                 **UNITED STATES BANKRUPTCY COURT**

11                 **SOUTHERN DISTRICT OF CALIFORNIA**

12

| 13 | In re | Case No. 08-4147-11 |
|----|-------|---------------------|
| 14 | STEAKHOUSE PARTNERS, INC., a Delaware Corporation, | [Jointly administered with Case Nos. 05-4152-11 and 08-4153-11] |
| 15 | | |
| 16 | Debtor in Possession. | Chapter 11 |
| 17 | | Adv. Proc. Case No. |
| 18 | STEAKHOUSE PARTNERS, INC., PARAGON STEAKHOUSE RESTAURANTS, INC., AND | **COMPLAINT TO SURCHARGE COLLATERAL OF THE CLASS IV** |
| 19 | PARAGON OF MICHIGAN, INC., | **CREDITOR TRUST** |
| 20 | Plaintiffs, | |
| 21 | vs. | Honorable James W. Meyers |
| 22 | T. SCOTT AVILA, in his capacity as Creditor Trustee of the Class IV Creditor Trust, | |
| 23 | | |
| 24 | Defendant. | |

25

26          Plaintiffs Steakhouse Partners, Inc., Paragon Steakhouse Restaurants, Inc., and Paragon of

27  Michigan, Inc., debtors and debtors in possession (the "Debtors") in the above captioned

28  bankruptcy cases allege as follows:

**INTRODUCTION**

1.      By this adversary proceeding the Debtors seek to surcharge the collateral of the defendant T. Scott Avila, as Creditor Trustee of the Class IV Creditor Trust and the Class IV Creditor Trust (collectively, the "Creditor Trust") pursuant to the provisions of section 506(c) of Title 11 of the United States Code (the "Bankruptcy Code"), for the expenses associated with the sale of the secured creditor's collateral including but not limited to the expenses incurred by the Debtors to operate their restaurants as going concerns to maximize the value of the collateral and services rendered by various estate professionals (the "Estate Professionals") to preserve and sell the Debtors' restaurants to various third parties.  As described below, but for the expenditure of estate funds to operate the restaurants and the services of the Estate Professionals during these bankruptcy cases, the Debtors' restaurants would have ceased operations and the Creditor Trust's collateral would have been sold for very little value in a piece-meal liquidation.  Instead, as a result of the efforts of the Estate Professionals and the Debtors' use of its cash flow to preserve the restaurants as going concerns, twelve of these restaurants (the "Restaurants") have been sold as operating businesses complete with real property leases for the premises, all furniture, fixtures, and equipment, all food inventory and supplies, licenses of the Debtors' interest in the service or trademarks or trade names associated with each restaurant, all personal property at the premises and the liquor licenses associated with respect thereto.  As a result of these sales, the Debtors have received approximately $2.55 million in gross cash sale proceeds and promissory notes related to the sale of three of the Restaurants in the aggregate amount of $440,000.  The promissory notes are payable in installments over the next two years.  After payment of cure costs and other costs of sale and certain disbursements therefrom as approved by the Court, as of the date of this Complaint, the Debtors are holding $921,061 in remaining sale proceeds in a segregated debtor-in-possession account.  The Debtors are entitled to surcharge the collateral of the Creditor Trust as it is the senior secured lender and it directly benefited from these services, expenses and the use of the Debtors' cash flow to preserve and sell the Restaurants as going concerns.

**JURISDICTION AND VENUE**

2.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b) in that this proceeding arises under the Bankruptcy Code and arises in and is related to the above captioned cases under the Bankruptcy Code.  The causes of action set forth herein involve the determination and allowance of claims pursuant to section 506(c) of the Bankruptcy Code and, as such, constitute "core proceedings" pursuant to 28 U.S.C. § 157(b)(2).

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

**THE PARTIES**

4.     The plaintiff Debtors are the debtors in possession under the above captioned chapter 11 cases filed in this Southern District of California on May 15, 2008.  Debtor Steakhouse Partners, Inc. is a Delaware corporation.  Debtor Paragon Steakhouse Restaurants, Inc. is a Delaware corporation.  Debtor Paragon of Michigan, Inc. is a Wisconsin corporation.

5.     In February 2002, the Debtors filed their first voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Central District of California, Riverside Division (the "Initial Filing").  The Class IV Creditor Trust was created upon confirmation of the First Amended Joint Plan of Reorganization on December 19, 2003 in the Initial Filing for the purpose of collecting, maintaining and distributing the Class IV Trust assets to the unsecured creditor class from the Initial Filing.  The defendant T. Scott Avila is the trustee of the Class IV Creditor Trust and is a named defendant in this adversary proceeding only in his capacity as trustee (the Creditor Trust and its Trustee are collectively referred to as the "Creditor Trust").

**FACTUAL ALLEGATIONS**

6.     On May 15, 2008 the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.

7.     The three Debtors are related corporations who were engaged in the operation of 21 full service steakhouse restaurants located in the seven states of Arizona, California, Indiana,

1    Michigan, North Carolina, Ohio and Utah.  These restaurants principally operated under the brand

2    names of Hungry Hunter, Hunter Steakhouse, Mountain Jack's and Carvers.

3                    **The Debtors' Prior Bankruptcy Cases**

4            8.        On February 15, 2002, Steakhouse Partners filed a voluntary petition for relief under

5    chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District

6    of California (the "Bankruptcy Court").  On February 19, 2002, Paragon Steakhouse and Paragon

7    of Michigan also filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the

8    Bankruptcy Court (together, the "Initial Filing").  Effective December 31, 2003, the Debtors

9    confirmed a Joint Plan of Reorganization (the "2003 Plan").

10           9.        The 2003 Plan provided for the creation of the Class 4 Creditor Trust for general

11   unsecured claimants with claims in excess of $4,000 with a trustee (the "Trustee") for the purpose

12   of collecting, maintaining and distributing the Steakhouse Partners Class 4 Creditors Trust Assets.

13   The trust assets consisted of, among other things, a $1 million payment within thirty days of the

14   plan's effective date and payments under a promissory note in the original principal amount of

15   $5,030,000.

16                   **The Secured Claim of the Creditor Trust & The Debtors' Real Estate Liquidation**

17   **Plan**

18           10.       In early 2007, the Debtors began a real estate liquidation plan designed to make

19   structured payments on their debt to the Creditor Trust.  Prior to May 2007, the Debtors made

20   $1,192,000 in payments to the Creditor Trust under the plan and the promissory note. The Creditor

21   Trust and the Debtors entered into a settlement agreement modifying the terms of the promissory

22   note which was approved by the bankruptcy court in the Prior Bankruptcy Cases (the "Settlement

23   Agreement").

24           11.       The Debtors failed to make the payments required under the Settlement Agreement

25   and, on or about May 18, 2007, the Creditor Trust sent a notice of default to the Debtors.

26           12.       The Debtors and the Creditor Trust executed a forbearance agreement ("Forbearance

27   Agreement") pursuant to which the Debtors were required to either make cash payments by certain

28   trigger dates, or have entered into asset purchase agreements for Restaurants for the equivalent

1   amount by the same trigger dates.  The Forbearance Agreement formalized the real estate sales plan

2   which was already being implemented by the Debtors.

3       13.    Thereafter, the Debtors entered into certain asset purchase agreements and paid

4   approximately $928,000 to the Creditor Trust.

5       14.    As of the date of the filing of the bankruptcy cases, the Debtors are liable to the

6   Creditor Trust in an amount in excess of $4.8 million.

7       15.     As part of the 2003 Plan, the Creditor Trust was granted a lien on certain assets

8   belonging to the Debtors and holds a first priority lien on the Debtors' leaseholds, personal

9   property and intellectual property and the proceeds thereof.  The Creditor Trust is the principal

10  secured creditor of the Debtors.

11      16.    The Creditor Trust does not have a lien on the Debtors' cash or deposit accounts.

12  **The Debtors Sale of Their Restaurants as Going Concerns**

13      17.    By late 2007, the Debtors determined that they had to sell all of their Restaurants in

14  order to satisfy their obligations to the secured creditors and other creditors and accordingly

15  launched a full-scale sales process, working with local brokers and brokers that specialized in the

16  sale of restaurant properties, marketing the restaurants for sale either as a group or as individual

17  purchases.

18      18.    The Debtors attempted to sell their restaurants as going concerns to achieve the

19  highest and best price.  The Debtors' prepetition experience selling restaurants demonstrated that

20  restaurants must be sold as going concerns with the leasehold interest, alcohol license, personal

21  property and inventory included in order to maximize value.  Restaurants which are closed prior to

22  sale and liquidated piecemeal have no "going concern" value.  Restaurateurs do not want a closed

23  restaurant property because the inventory and operating licenses (including liquor) are not

24  available, and the "dark building" offers no built-in customer base.  Alternate use buyers shy away

25  from such a purchase because a restaurant building requires extensive remodeling (especially with

26  approximately 40% of the square footage allocated to the kitchen) or razing to be suitable for

27  alternative use.

28

19.     Prepetition several circumstances thwarted the ability of the Debtors to close sales of their restaurants and led to the Debtors filing voluntary chapter 11 petitions:

(a)     The Debtors could not close sales of their California restaurants due to issues with the California State Board of Equalization ("SBE").  Specifically, the California Department of Alcoholic Beverage Control refused to authorize the transfer of the liquor licenses associated with certain restaurants unless the Debtors satisfied all of their outstanding liabilities to the California SBE, not just those liabilities associated with the restaurant that was the subject of the proposed sale.

(b)     The Debtors were also running out of cash to fund the continued operation of their restaurants while they aggressively marketed the restaurants for sale.  The Debtors needed the breathing room afforded by the automatic stay to continue operating until buyers could be located and sales could be negotiated.

(c)     the Debtors had begun to receive 3-Day Notices to Pay Rent or Quit certain of their premises.  After considering other alternatives, the Debtors determined that a bankruptcy filing was necessary to preserve the value of the restaurants for the benefit of this secured creditor and other creditors.

(d)     Additionally, the Debtors could not close sales of their restaurants without being able to assign the leases to the buyers.  The Debtors' landlords were uncooperative and the Debtors could not compel them to consent to the assignments.

20.     As a result of these circumstances, the Debtors sought the protection of chapter 11 for the express purpose of operating and selling their restaurants as going concerns as soon as possible.  The Debtors filed their petitions with the specific intent of seeking to conduct a sale process as quickly as possible and utilizing sections 363 and 365 of the Bankruptcy Code to allow the Debtors to assume and assign the leaseholds to the buyers and to transfer the California liquor licenses to the buyers without first satisfying all of the Debtors' outstanding tax obligations to the California SBE.

21.     Since the filing of these bankruptcy cases on May 15, 2008, the Debtors have operated 21 of their restaurants, of which twelve have been sold with the approval of this Court and nine have been closed.

22.     To date the Court has entered orders approving the sales of the Debtors' restaurants located in Auburn Hills (MI), Bakersfield, Folsom, Glendale (AZ), Lafayette (IN), Oceanside, Roseville, San Diego, Sandy (UT), South Bend (IN), South San Francisco and Temecula.  The Debtors also sold the personal property and liquor licenses associated with its Modesto and Centerville (OH) restaurants.

23.     As a result of these sales, the Debtors have received approximately $2.55 million in gross cash sale proceeds and the Debtors have received promissory notes related to the sale of three of their restaurants in the aggregate amount of $440,000.  The promissory notes are payable in installments over the next two years.  After payment of cure costs and costs of sale and certain disbursements therefrom as approved by the Court, the Debtors are holding $921,061 in remaining sale proceeds in a segregated debtor-in-possession account.

24.     The Debtors used their diminishing cash to operate the Restaurants for the purpose of selling them as going concerns.  Because the cash generated from operations is not encumbered by a lien in favor of the Creditor Trust, the Debtors could have used this cash to satisfy claims, including those of the Estate Professionals.  Had the Debtors not worked to sell the Restaurants as going concerns to achieve the highest price possible, they could have made different decisions regarding the operation and closure of particular Restaurants.  Instead, the Debtors spent approximately all of their operating cash flow (approximately $13 million) and incurred additional administrative expenses to continue to operate the restaurants while they were aggressively marketing them in order to maximize their value.  Sale of the Restaurants as going concerns was the only viable option for satisfying the Creditor Trust's secured claim.

25.     Ultimately, due in large part to the fact that the Debtors were seeking buyers for restaurants while the nation's economy spiraled downward and sales at the restaurants declined as consumers started eating out less frequently, the sales proceeds were insufficient to fully satisfy the

1  Creditor Trust's secured claim and pay administrative priority claims of the estate, including those
2  of the Estate's Professionals.

3        26.    Accordingly, the Debtors seek to surcharge the collateral of the Creditor Trust for
4  the operational expenses of the Restaurants in an amount subject to proof at trial but not less than
5  the $13.0 million, which the Debtors used to operate the Restaurants as going concerns.

6        **The Estates' Professionals**

7        27.    With the approval of this Court, the Debtors retained Liner Grode Stein Yankelevitz
8  Sunshine Regenstreif & Taylor LLP, formerly known as Liner Yankelevitz Sunshine & Regenstreif
9  LLP, as its general bankruptcy counsel ("Liner") effective as of May 15, 2008.   With the approval
10 of this Court, the Debtors retained Revitalization Partners to assist the Debtors with the sales
11 process effective as of July 12, 2008.

12       28.    Since the May 15, 2008 petition date, Liner has provided substantial assistance to
13 the Debtors.  These services were focused on the sale of the Debtors' Restaurants as going
14 concerns and included but were not limited to negotiation and documentation of the sale of the
15 restaurants, motion for approval of a sale and bidding procedure for the sale of the assets and
16 negotiations with the creditor representatives related thereto, motions for approval of the sale of the
17 Debtors' Restaurants and related assets, addressing the issues of landlords regarding payment of
18 cure costs and rent, addressing issues of creditors that affected the ability of the Debtors to continue
19 to operate their restaurants as going concerns, including PACA creditors, addressing issues raised
20 by the U.S. Trustee, addressing issues related to the sale of the Debtors' liquor licenses and issues
21 related to the closure of restaurants.  These actions also included frequent communication with
22 creditors' representatives regarding the sales process, restaurant sales and business operations.  All
23 of the services rendered by Liner were reasonable and necessary to preserve the assets of the
24 Debtors' estates and to the sale of the assets of the estates and provided a direct benefit to the
25 Creditor Trust.  To date, Liner has incurred $438,696 in fees and $40,078 in expenses to perform
26 these services.  Liner continues to provide services to the Debtors for which it incurs fees and
27 expenses that benefit the collateral and such fees and expenses should be surcharged against the
28 collateral of the Creditor Trust.

COMPLAINT TO SURCHARGE COLLATERAL OF THE CLASS IV CREDITOR TRUST

0078506/001/ 425426v06

29.     From July 12, 2008 through September 2008, Revitalization Partners provided substantial and valuable assistance to the Debtors with the sales process.  These services included assisting the Debtors with the solicitation of offers for the purchase of restaurants and negotiation with prospective purchasers.   These services were reasonable and necessary to bring the sales process to a successful conclusion and to assure the receipt of the maximum value for the Debtors' Restaurants.  Revitalization Partners has incurred $54,125 in fees and $3,264.16 in expenses to perform these services.

30.     Because of the critical services rendered by the Estate Professionals the Debtors' business operations remained intact and the Debtors were able to continue operating their viable restaurants until they were sold as going concerns.  The preservation of the Restaurants as going concern businesses, funded by unencumbered cash flow generated from operations rather than the Creditor Trust's cash collateral, and the eventual sales of the Restaurants allowed the Creditor Trust to recover not less than $2,900,000 from the sale of its collateral instead of the vastly smaller sums it would have garnered in a piecemeal liquidation of the restaurants if they had ceased operations and were sold without the associated leaseholds and liquor licenses.

31.     Accordingly, the Debtors are hereby seeking to and are entitled to surcharge against the Creditor Trust's collateral for the cost of certain of the services performed by the Estate Professionals as well as their related out of pocket disbursements and the Debtors' use of the Restaurant cash flows in an amount subject to proof at trial.

32.     The Debtors have also incurred fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930 which were reasonable and necessary and benefited the Creditor Trust in an amount to be proven at trial.

33.     In addition, the Debtors are informed that the Official Committee of Unsecured Creditors in the Paragon Steakhouse case asserts that the professionals retained on behalf of the Committee (the "Committee Professionals") provided value in connection with the sale of the Debtors' restaurants, which services benefited the Creditor Trust in an amount to be proven at trial.

COMPLAINT TO SURCHARGE COLLATERAL OF THE CLASS IV CREDITOR TRUST

0078506/001/ 425426v06

**FIRST CLAIM FOR RELIEF**

34. The Debtors hereby repeat and re-allege the allegations set forth in paragraphs 1 through 33 above as if fully set forth herein.

35. The Creditor Trust holds a first priority lien on the Debtors' leaseholds, personal property and intellectual property and the proceeds thereof and, as a result, is the principal secured creditor of the Debtors.

36. The Debtors are entitled to surcharge the Creditor Trust's collateral under section 506(c) for services rendered, related expenses incurred, and cash flows used to preserve the Restaurants as going concerns. The services rendered by the Estate's Professionals, and the use of the cash flows from the Restaurants, were reasonable and necessary to preserve the value of the assets of the estates securing the Creditor Trusts' claim. Without the benefit of these services and the use of the Restaurants' cash flows, the estates' assets would not have been sold on a going concern basis.

37. Specifically, the Creditor Trust's collateral should be surcharged to recover the costs of the following services, expenses and use of Restaurant cash flows:

(a) By Liner in an aggregate amount of not less than $478,774 consisting of $438,696 in fees for services and $40,078 in expenses;

(b) By Revitalization Partners in the aggregate amount of $57,389.16 consisting of $54,125 in fees for services and $3,264.16 in expenses;

(c) By Debtors in an amount up to $13,000,000 consisting of the cash flows generated by the Restaurants and the unpaid administrative expenses of operation of the Restaurants used and incurred by the Debtors to preserve the Restaurants as going concerns until they were sold; and

(d) Such other amounts for services rendered by the Committee Professionals in an amount to be proven at trial.

38. The aforementioned services, expenses and use of cash flows preserved and enhanced the value of the Creditor Trust's collateral and provided a direct benefit to the Creditor Trust upon the sale of the Restaurants as going concerns. Therefore, under section 506(c) of the

1  Bankruptcy Code, the Debtors are entitled to surcharge the assets of the Debtors which were

2  subject to the liens of the Creditor Trust as well as their proceeds to the extent that such assets were

3  converted into cash upon the sale of the Debtors' Restaurants.

4       **WHEREFORE**, the Debtors respectfully request entry of an order (i) authorizing the

5  Debtors to surcharge the Creditor Trust's collateral in an amount subject to proof at trial for

6  payment of the professional fees and related expenses as provided herein and the Debtors' use of

7  Restaurant cash flows and (ii) granting any other or further relief as is just and proper.

8

9  DATED: April 14, 2009          LINER GRODE STEIN YANKELEVITZ
                           SUNSHINE REGENSTREIF & TAYLOR LLP

10

11

12                            By: _/s/ Julia W. Brand_____

13                                 Julia W. Brand
                               Enid M. Colson

14                           Attorneys for Debtors in Possession and Plaintiffs
                         STEAKHOUSE PARTNERS, INC., PARAGON

15                           STEAKHOUSE  RESTAURANTS,  INC.,  &
                         PARAGON OF MICHIGAN, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.  08-4147-11
COMPLAINT TO SURCHARGE COLLATERAL OF THE CLASS IV CREDITOR TRUST

0078506/001/ 425426v06